IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KEITH A. RAKES, #299323                *
           Plaintiff,
   v.                                   *   CIVIL ACTION NO. DKC-05-2903

WARDEN, MCTC                           *
           Defendant.
                               ***

**MEMORANDUM**

I. Procedural History

On October 21, 2005, this court received a letter from Maryland Correctional Training Center ("MCTC") inmate Keith A. Rakes asking for "court assistance" and complaining that on September 23, 2005, he was transferred to MCTC, even though officials had prior knowledge and documented evidence that he had "known enemies" at that prison.[1]  Paper No. 1.  The letter was treated as a 42 U.S.C. § 1983 civil rights complaint, and the court ordered the Office of the Attorney General ("OAG") to file a response.  The OAG's Answer was filed on November 17, 2005.  Paper No. 4.

On December 5, 2005, however, Plaintiff filed a letter with the court requesting further emergency relief.  Paper No. 7.  He complained that on November 23, 2005, three correctional officers at MCTC confiscated all legal paper work in his possession, including the aforementioned OAG's Answer, pursuant to the orders of MCTC Captain Webreak.  Paper No. 7.  He further claimed that he is being threatened by MCTC staff for filing this case and is being denied the alternative "bag" meals that Captain Crilly indicated he was receiving.  *Id*.  Plaintiff indicated that

---

[1] Plaintiff claimed that his life is in danger, regardless of his assignment to administrative segregation "protective custody," and complained that: (i) feed-up is provided by general population inmates, who are not monitored by MCTC staff; and (ii) he has been threatened since his transfer to MCTC.  Paper No. 1 at 1.

he was not eating out of fear for his safety and well-being. Defendant was ordered to file a supplemental show cause response to Plaintiff's new allegations on or before December 13, 2005. Supplemental responses were filed on December 13 and December 16, 2005.[2] Paper Nos. 9 & 10. Plaintiff filed his opposition response on January 9, 2006. Paper No. 15. The case is ready for consideration and may be determined on the pleadings. *See* Local Rule 105.6. (D. Md. 2004).

## II. Standard of Review

In order to survive a defendant's properly supported motion for summary judgment, a plaintiff is required to produce some evidence to support each of his claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Where all of the materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *See Celotex*, 477 U.S. at 322. While the facts and all reasonable inferences drawn therefrom must be viewed in a light most favorable to the party opposing the motion, *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985), "when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Only disputed issues of material fact will preclude the entry of summary judgment. "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To meet the standard for establishing a failure-to-protect claim under the Eighth Amendment, a prisoner must project evidence that a prison official "knows of and disregard an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could

---

[2] As the Warden's responses provided substantive answers to Plaintiff's letter complaint for injunctive relief and were accompanied by various exhibits, the pleadings were treated as motions for summary judgment and, pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), Plaintiff was provided notification of his opportunity to file opposition responses. Paper Nos. 5, 6, & 11.

be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Rich v. Bruce,* 129 F.3d 336, 339-40 (4th Cir. 1997). Where, as here, an inmate is seeking injunctive relief in conjunction with his Eighth Amendment claim, relief may only be granted if the inmate can demonstrate: (i) the likelihood he will be irreparably harmed if emergency relief is denied; (ii) the likelihood that defendant will not be harmed if the requested relief is granted; (iii) the likelihood that the inmate will succeed on the merits; and (iv) the public interest will be served if the injunction is granted. *See Blackwelder Furniture Co. v. Seilig Manufacturing Co.*, 550 F.2d 189, 195-96 (4th Cir. 1977).

### III.  Analysis

Based upon a review of the materials provided this court, the Complaint for injunctive relief shall be dismissed. In response to the filing of this action, MCTC Captain Crilly spoke to Plaintiff and to other unidentified persons. According to the record, Plaintiff is a member of the National Alliance who claims that the Black population at MCTC is trying to harm him as a result of his racial views. He asserts that Maurice Smith and John Harrison are his enemies. Neither inmate, however, is on his OBSCIS enemies list. Defendant states that there are two Maurice Smiths at MCTC, neither of whom could be identified by Plaintiff. In addition, both Smiths are in MCTC general population, while Plaintiff is housed on administrative segregation due to his safety concerns.[3] Inmate John Harrison is not confined at MCTC.

---

[3]  According to Defendant's attachments, while housed at the Western Correctional Institution in March of 2003, Plaintiff requested protective custody status because he had a general problem being housed with Black inmates. Paper No. 4 at Ex. 1. He was offered assignment to another housing unit, but indicated he would stay where he was unless he could be moved to protective custody. *Id.* In addition, while confined at the Maryland Correctional Instituition in Hagerstown ("MCIH") in November of 2004, Plaintiff was placed on administrative segregation pending investigation into allegations that inmates were "dropping notes" on him. Paper No. 4 at Ex. 1. Plaintiff was also placed on administrative segregation at MCIH on February 10, 2005, based on his allegations that he could not enter general population due to drug debts owed to other inmates. *Id.* It also appears that sometime in February of 2005, Plaintiff informed MCIH personnel that he could not be on general population due to a broken hand. *Id.*

With regard to the food service, Plaintiff's tier officer has offered to let Plaintiff pick his lunch tray or to order him bagged meals in order to quell his fears of adulterated food. Although he did not receive bag meals on November 24 and 25, 2005, when staff refused to offer him such meals due to the absence of documentation, this problem was remedied by MCTC Lt. McCauley, who documented the bagged meal request with Plaintiff's consent. Plaintiff is currently receiving bagged meals on all three shifts.

Defendant states that the confiscation of mail and legal materials on November 23, 2005, resulted from a misunderstanding and a need to determine if the OAG had issued an order with regard to bagged meals. Defendant indicates that when it was discovered that the confiscation was unnecessary, Plaintiff's materials were returned to him, untouched, after four days.[4]

The materials show that Plaintiff is being protected at MCTC by being housed on administrative segregation. He has been accommodated with bagged meals, instead of regular meals, in deference to his safety concerns.[5] Further, although there is no dispute that Plaintiff's legal materials were confiscated, they were returned to him after four days and he has been provided all relevant documents related to this case.

IV. Conclusion

---

[4] Plaintiff claims that while the documents were returned to him, legal materials relating to this case were missing. Paper Nos. 12 and 13. The Clerk was subsequently directed to provide Plaintiff copies of all relevant pleadings in this case. *See* Paper No. 14.

[5] In his opposition response, Plaintiff for the first time alleges that a contaminate was placed in his food and that on October 11, 2005, he was examined on an emergency basis by a physician's assistant for food poisoning. Paper No. 15. He claims that as a result of testing and treatment, his "elevated liver and kidney functions are severely high with internal damage." *Id.* Not only has Plaintiff failed to provide any documentation to bolster this eleventh hour allegation, but material (summary psychological chart review) provided to the court in Defendant's initial supplemental response is not supportive of this claim. *See* Paper 9 at Ex. 2

Plaintiff has failed to come forward with rebuttal evidence to demonstrate that his safety is at risk at MCTC.[6]  Consequently, judgment shall be entered in favor of Defendant and this Complaint for injunctive relief shall be dismissed.  A separate Order follows.


Dated: January 25, 2006.                              /s/
                                            DEBORAH K. CHASANOW
                                            United States District Judge

---

[6] According to Captain Crilly, Plaintiff will be eligible for minimum or pre-release status on or about February 10, 2006.